UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE MOORE,

    Plaintiff,

v.

CARMEN PALMER *et al.*,

    Defendants.

_____/

Case No. 12-cv-14783
Hon. Matthew F. Leitman

## ORDER GRANTING IN PART AND DENYING IN PART THE PORTIONS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PREVIOUSLY TAKEN UNDER ADVISEMENT (ECF #107)

Plaintiff Maurice Moore ("Moore") is a former inmate of the Michigan Department of Corrections ("MDOC"). Moore has asserted that several MDOC employees and officials violated his Eighth Amendment rights while he was incarcerated.[1] (*See* Compl. at ¶¶ 116-27, ECF #1 at 20-22, Pg. ID 20-22.) On March 15, 2016, several MDOC defendants filed a motion for summary judgment (the "Motion"). (*See* ECF #107.) On June 3, 2016, the Court held a hearing on the Motion. The Court announced its ruling with respect to the claims against certain defendants and took three claims under advisement: Moore's Eighth Amendment

---

[1] On June 6, 2016, the Court entered an Order granting summary judgment in favor of all defendants with respect to Moore's First Amendment claims and his claims of gross negligence and intentional infliction of emotional distress. (*See* ECF #113.)

1

claims against Defendants Matthew Macauley ("Macauley"), Ken Niemisto ("Niemisto"), and Shane Place ("Place") (collectively, the "Defendants"). (*See* ECF #113.) This Order addresses only those claims. For the reasons provided below, the Motion is **GRANTED** with respect to Defendant Macauley and **DENIED** with respect to Defendant Niemisto and Defendant Place.

## ESSENTIAL FACTS AND BACKGROUND

The factual background of Moore's claims against Defendants was discussed in detail at the Court's June 3, 2016, hearing on the Motion. Accordingly, the Court provides here only those facts essential to resolving the Motion.

All of Moore's claims against Defendants relate to his allegation that he was repeatedly and viciously assaulted by members of the Latin Counts gang (or at the behest of the Latin Counts gang) while he was in MDOC custody. (*See generally* Compl., ECF #1.) Moore alleges that during a prison riot in 1995, he helped save a corrections officer from an attack by members of the Latin Counts gang, and he claims that his actions "marked [him] as a target among the inmates" for the remainder of the time he was in MDOC custody – particularly among the Latin Counts gang. (Pl.'s Resp. Br. at 2, ECF #109 at 10, Pg. ID 923.) The parties do not dispute that Moore was attacked several times by other inmates while he served his sentence. Three of those attacks are relevant to claims addressed in this Order:

one attack at the Michigan Reformatory ("RMI") and two attacks at Marquette Branch Prison ("MBP").

**A.  The Attack at Michigan Reformatory and Moore's Eighth Amendment Claim Against Defendant Macauley**

In 2010, Moore was housed at RMI.  Moore says that he told Defendant Macauley, a deputy warden at RMI, that he was "starting to hear that the Latin Counts is going to get me. . . . I'm serious about this."  (Moore Dep. at 121, ECF #73-2 at 32, Pg. ID 421.)  On June 12, 2010, Moore was slashed with a shank from "inside [his] right ear down the right side of his neck toward the throat area." (Critical Incident Report at 3, ECF #70-8 at 4, Pg. ID 322.)  Moore says that Defendant Macauley violated the Eighth Amendment by ignoring the substantial risk to Moore's well-being. (*See id.*)

**B.  The Attacks at Marquette Branch Prison and Moore's Eighth Amendment Claims Against Defendants Niemisto and Place**

On June 25, 2010, Moore was transferred from RMI to MBP.  (*See* Moore Dep. at 123, ECF #73-2 at 32, Pg. ID 421.)  Upon his arrival to MBP, Moore spoke with Defendant Niemisto (a resident unit manager at MBP) and Defendant Place (an assistant deputy warden at MBP) about how he feared for his safety. (*See id.* at 123-26, ECF #73-2 at 32-33, Pg. ID 421-22.)            .

Moore's fears came to fruition when he was attacked on two separate occasions.  First, on March 11, 2011, Moore was attacked while he was in the

3

prison kitchen. (*See* Assault Investigation Report, ECF #109-4 at 2, Pg. ID 960.) During that assault, an inmate ran up to Moore and "started striking him with a closed fist." (*Id.*) Following the assault, both Defendant Niemisto and Defendant Place received a copy of the "Assault Investigation Report" related to the attack. (*See id.*) Among other things, the report said that Moore may have been attacked because he had previously provided information to prison officials about a "possible hit" on an officer. (*Id.*)

Second, on April 24, 2011, Moore was attacked while he was in the prison auditorium. During that attack, Moore was stabbed in the eye with a pencil, causing a puncture wound. (*See* Critical Incident Report, ECF #70-9 at 4, Pg. ID 326.) As a result, Moore required surgery to remove the pencil lead that was "lodged in the bone at the back of his eye." (*Id.*)

Moore now claims that Defendant Niemisto and Defendant Place violated the Eighth Amendment by failing to protect him from these attacks.

## **GOVERNING LEGAL STANDARD**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party

and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

## THE LEGAL FRAMEWORK

### A.   The Court's Two-Pronged Qualified Immunity Analysis

When a "defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-part inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). "The first [prong] asks whether the facts taken in the light most favorable to the party asserting injury show the officer's conduct violated a federal right." *Tolan*, 134 S. Ct. at 1865. "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1867. "[B]oth [parts] must be answered in the affirmative for the case to go to a

5

factfinder . . . . If either one is not satisfied, qualified immunity will shield the officer from civil damages." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866. The Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## B. The Eighth Amendment Framework

Prison officials have a duty under the Eighth Amendment to provide inmates with "humane conditions of confinement; prison officials must . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. "A subjective approach must be used to determine whether the defendants had the state of mind . . . of deliberate indifference to inmate health or safety." *Street v. Corrections Corp. of America*, 102 F.3d 810, 815 (6th Cir. 1996) (quotations and citation omitted). Under this subjective approach,

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and

6

> disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (quoting *Farmer*, 511 U.S. at 837).

## ANALYSIS

### A. Defendant Macauley Is Entitled to Summary Judgment

The evidence, taken in the light most favorable to Moore, is not sufficient to create a material factual dispute with respect to whether Defendant Macauley was deliberately indifferent to a substantial risk of serious harm to Moore.

Moore's deliberate indifference claim against Macauley rests entirely upon one line from Moore's deposition testimony. According to Moore, he told Defendant Macauley "I'm starting to hear that the Latin Counts is going to get me. . . . I'm serious about this." (Moore Dep. at 121, ECF #73-2 at 32, Pg. ID 421.) That sole statement to Macauley – a report of rumors that Moore heard – was not sufficient to put Macauley on notice that Moore faced a substantial risk of serious harm. Notably, Moore has not presented any evidence that Macauley was aware of Moore's relevant history (i.e., his effort to protect a guard from the Latin Counts during the 1995 riot), nor has Moore presented any evidence that Macauley was aware of any previous attack upon, or threat against, Moore. Indeed, Moore has not presented any evidence that Macauley knew anything (other than Moore's self-reported rumor) about Moore or his situation. Under these circumstances, no

7

reasonable juror could find that Macauley was actually aware of a substantial risk of serious harm to Moore and that Macauley disregarded the risk. Accordingly, Macauley is entitled to summary judgment.

**B.     Defendants Niemisto and Place Are Not Entitled to Summary Judgment**

The evidence, taken in the light most favorable to Moore, is sufficient to create a material factual dispute as to whether Defendants Niemisto and Place (1) were aware of a substantial risk of serious harm to Moore, and (2) disregarded that risk.

   **1.     Defendant Niemisto**

It is undisputed that Moore discussed his security concerns with Defendant Niemisto. Moore testified at his deposition that he "talked to [Niemisto] about [his] placement" at MBP and informed Defendant Niemisto that he kept seeing "these faces [i.e, members of the Latin Counts] down there." (Moore Dep. at 125-26, ECF #73-2 at 33, Pg. ID 422.) And Defendant Niemisto acknowledged that Moore raised issues with prison gangs at MBP (although Niemisto claimed Moore downplayed the seriousness of the issues). (*See* Niemisto Dep. at 15, ECF #109-7 at 5, Pg. ID 988.) Moreover, Niemisto received the Assault Investigation Report for the March 11, 2011 attack on Moore. (*See* ECF #109-4 at 2, Pg. ID 960 (document trailer indicates Assault Investigation Report was distributed to all resident unit managers).) As described above, that report described an assault on

Moore and stated that Moore may have been attacked because he provided information to prison staff that "there was a possible hit on an officer." *Id.*

Once Niemisto received and reviewed the report, he knew (1) that Moore had raised concerns about being attacked, and (2) that Moore had actually been the victim of a serious attack. These circumstances were sufficient to put Niemisto on notice that Moore faced a substantial risk of serious harm. Yet, Niemisto neither worked to transfer Moore to another prison nor to place Moore in protective custody. Viewing these facts in Moore's favor, a jury could find that Defendant Niemisto was deliberately indifferent to a substantial risk of serious harm to Moore. Accordingly, Niemisto is not entitled to summary judgment.

### 2.     **Defendant Place**

As with Defendant Niemisto, it is undisputed that Moore raised concerns about his security with Defendant Place. Moore testified that, when he arrived at MBP in 2010, he told Defendant Place "I'm not going to feel safe knowing that I just got stabbed" at RMI. (Moore Dep. at 123-24, ECF #73-2 at 32-33, Pg. ID 421-22.) And according to Moore, Defendant Place responded by telling him "quit your whining. You can handle this stuff." (*Id.*) Defendant Place does not dispute that Moore expressed concerns for his safety at MBP. (*See* Place Dep. at 21, ECF #109-8 at 7, Pg. ID 1001.)

And like Defendant Niemisto, Defendant Place – an assistant deputy warden at MBP – also received the Assault Investigation Report for the March 11, 2011, attack on Moore. (*See* ECF #109-4 at 2, Pg. ID 960 (document trailer indicates Assault Investigation Report was distributed to assistant deputy wardens).) But Defendant Place also took no action to transfer Moore or place him in protective segregation even though he (Place) (1) knew that Moore had expressed fear of being attacked, (2) knew that Moore had been attacked at his prior facility, and (3) knew that Moore had actually been attacked in March of 2011 in MBP (the very facility in which Place worked). Viewing these facts in the light most favorable to Moore, a jury could find that Defendant Place was deliberately indifferent to a substantial risk of serious harm to Moore. Accordingly, Place is not entitled to summary judgment.

## CONCLUSION

For the reasons explained above and for the reasons stated on the record during the June 3, 2016 hearing on the Motion, **IT IS HEREBY ORDERED** that the Motion (ECF #107) is **GRANTED** with respect to Defendant Macauley and **DENIED** with respect to Defendants Niemisto and Place.

                                            s/Matthew F. Leitman
                                            MATTHEW F. LEITMAN
                                            UNITED STATES DISTRICT JUDGE

Dated: June 13, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 13, 2016, by electronic means and/or ordinary mail.

                                        s/Holly A. Monda
                                        Case Manager
                                        (313) 234-5113